## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS,

AT THE OCTOBER TERM, A. D. 1860.

[Continued from Vol. 21.]

---

## BRINKLEY & WIFE VS. WILLIS ET AL.

One of several legatees, though there be a unity of legal interest between them, cannot sue for himself and for the other legatees, as in the instance of one or more creditors suing for the benefit of all that may be interested in a fund.

If an executor and trustee, charged with the execution of an express trust, is called to account for the administration of his trust in a court of equity, he will not be allowed the benefit of the statute of limitations—courts of equity applying the statute in obedience to legal rules where the right asserted is analogous to a legal right, but not giving a faithless trustee of an express trust the benefit of the statute of limitations.

Any cause of action must be prosecuted within a reasonable time, and what shall be such time so as to save a case from the bar of lapse of time, must be determined in each case upon its own circumstances.

A period of ten years would not be a sufficient lapse of time to save an executor from rendering an account of his trust, at the suit of a legatee who was an infant when the trust commenced, and so continued for several years after its violation, and the executor had not closed his trust in the Probate Court:

Nor ought the defence of lapse of time to be allowed to a trustee who furnishes the facts upon which to charge himself, and shows, by his own statement that he has not made restitution to the beneficiaries of the the trust, whose rights he has violated.

Though a trustee violate his trust, if the party interested in the trust delay for many years to bring suit for its recovery, without showing any reason for such delay, interest will be allowed him only from the commencement of the suit.

*Appeal from Sevier Circuit Court in Chancery.*

Hon. LEN B. GREEN, Circuit Judge.

S. H. HEMPSTEAD, for the appellants.

Willis being a trustee, an executor, he could not, by any length of possession, gain a title to any negro which came to him from the estate of Floyd. And this was expressly decided by this court in *Harriet vs. Swan,* 18 *Ark.* 504. He cannot shield himself from liability by the statute of limitations or lapse of time. For it being a matter of direct trust, and he being guilty of a breach of trust, the doctrine, which obtains in this and all such cases, is, that limitation does not apply. *Kane vs. Bloodgood,* 7 *John. Ch. R.* 90; 2 *Sch. & Lef.* 607; *Angell sec.* 166, 168.

WATKINS & GALLAGHER, for the appellee.

Mr. Justice FAIRCHILD delivered the opinion of the court.

Although this suit was brought by William R. Brinkley, and Nancy Brinkley, his wife, for themselves and for others, who are the children of a former wife of Willis, the principal defendant in this case, it must be treated as the suit of Brinkley and wife alone.

That there was a unity of legal interest between Brinkley and wife and the children of Ann Willis deceased, as legatees

of the will of Alexander Floyd, did not authorize the former to institute a suit for the benefit of the latter.

Except in the instance of one or more creditors suing for all that may be interested in a fund, and in a few other instances, not including such a case as this, and not necessary to be mentioned here, persons whose interests are to be affected by a decree, should be made direct and original parties to a suit, so that they themselves, or their next friends, or legal representatives, may be liable for costs, and be personally subject to such orders as the condition of the case may require to be made upon the parties.

And no person is authorized to use the name of other persons interested in the subject of a suit, as acting for and on behalf of them, except for married women, infants, lunatics, or persons under some disability to sue for themselves; and in such case legal authority must be shown for interfering in their business. Otherwise, the persons who are to be co-plaintiffs must become so in their own persons, in their own names, and not by the intervention of an irresponsible person, who may be willing to urge a suit in their behalf. And if such as are interested with a plaintiff, will not unite with him in a suit, the rules of chancery practice afford a remedy by which his own interest need not suffer from their disinclination to sue.

In June 1831, Alexander Floyd, of Franklin county, Tennessee, made his last will, in which was the following clause, and upon which this suit is founded:

"Sixthly. I will that in twenty days after my burial, I wish all the balance of my personal property to be sold, and the amount thereof, together with all the balance of my effects or money I leave, to be equally divided amongst the surviving lawful heirs of my son William Floyd, deceased, and the heirs of my daughter, Ann Willis, deceased, intermarried with Anderson F. Willis."

The above named Anderson F. Willis, defendant in this case, was appointed executor of the will.

On the 27th of May, 1833, the testator was dead, as his will

was then offered for probate to the court of Pleas and Quarter
Sessions of the county before mentioned, but owing to a legal
contest of the will, it was not established till the July term,
1835, of the Circuit Court of Franklin county, whither the con-
test had been taken by appeal of Willis, executor of the will.

Although at the same term, Willis seems to have failed to
give the bond required of him as executor, yet there is an order
showing that, on the 23rd of November, 1835, he qualified as
executor in the court of Pleas and Quarter Sessions.

The records furnished to us are wholly silent in the description
of any property that came to the hands of Willis as executor,
only showing that David McElroy, who had charge of Alexan-
der Floyd's estate during the latter part of the contest about
the will, had obtained Willis' receipt in full for all moneys,
bonds, and effects of the estate, the receipt being dated 28th
November, 1835.

Mrs. Brinkley is the survivor of, and represents the interests
of the heirs of William Floyd, at least such is the claim of the
bill, and is not controverted in the answer of Willis; and the
bill preferred for her, by her and her husband, claims that
Willis, as executor of Alexander Floyd's will, received in trust
for the heirs of William Floyd, and of Ann Willis, seven slaves,
none of which have ever come to the hands of Brinkley and
wife, for which, and for their hire to the amount of twelve hun-
dred dollars, Willis is charged to be liable, one-half to the use
of Brinkley and wife.

For the times of the events related, reference has been made
to the after papers of the case, as the bill seems to have been
drawn without the date of the transactions it narrates, and
probably for this, and for other defects of indefiniteness, could
not, without amendment, be the foundation of any decree.

Although the answer of Willis and its attempt to account for
the disposition of the slaves of Alexander Floyd's estate, may
be indefinite in many parts, and unsatisfactory when definite,
it shows that whatever responsibility may attach to him,
accrues not from bad faith or fraudulent action, but in conse-

OF THE STATE OF ARKANSAS. 5

TERM 1860.]                 Brinkley & Wife vs. Willis et al.

quence of having undertaken a trust, and of not procuring a legal discharge therefrom.

But before examining the facts which would determine the relative rights and responsibility of the plaintiffs, and of the defendant Willis, it may be well to ascertain whether the length of time that intervened between the accrual of the right of the plaintiffs, and its assertion by this suit, shall have the effect to make such examination unnecessary.

The defendant Willis, the executor of the will of Alexander Floyd, sometime after the will was made, appears to have married the widow of William Floyd, whereby Nancy Floyd, now Nancy Brinkley, became a member of the family of Willis, and was supported and treated by him as a child, till her marriage to William R. Brinkley, in February, 1841, when she was still under twenty-one years of age.

It is abundantly shown by the evidence that in 1843, and before that time, William R. Brinkley was informed that his wife had a claim to negro property against Willis, under the will of Alexander Floyd, and that, in 1845, he employed a lawyer to attend to this interest. During this interval, from 1843, till the beginning of this suit in January, 1853, the parties were living in the same section of country, and no reason is shown why the suit could not have been as well begun at any time during the interval, as when it was begun.

While Nancy Floyd was an infant, the statute of limitations could not run against her; yet if it began to run before the marriage, it would not for that cease to run. *Gould's Dig.* ch. 106, sec. 31; *Carter vs. Cantrell*, 16 *Ark.* 165.

Though Brinkley and wife cannot have the benefit of different disabilities cumulative one upon another, it may not have any practical effect upon this case; because we are not certain that any cause of action existed against Willis concerning the slave George, till Willis had swapped him to Russey, which was about or near the time when the infant Nancy Floyd became Nancy Brinkley, and who thenceforward has been under the disability of coverture.

And more especially because the defendant Willis, as an executor and therefore a trustee, charged with the execution of an express trust till discharged therefrom by due course of law, would hold the property, or its proceeds, in trust for the legatees, without he had by notorious acts hostile to their claim and right, renounced the trust and converted the property to his own use. *Ferrill vs. Murry*, 4 *Yerg.* 106; *Kane vs. Bloodgood*, 7 *John. Ch.* 124.

And after having done so, if called to account for the administration of his trust in a court of equity, the statute of limitations would not exchange his violation of trust into a perfect title by the the flux of time. Courts of equity, which, in cases for the assertion of a right that is concurrent or analogous to a legal right, will apply the statute in obedience to legal rules, will not allow a defence founded upon the breach of an express trust to prevail: that is, will not give a faithless trustee of an express trust any benefit from a plea of limitations. *Decouche vs. Savetier*, 3 *John. Ch.* 215.

Still, any cause of action must be prosecuted within a reasonable time, and what shall be such time, so as to save the case from the bar of lapse of time, must be determined in each case upon its own circumstances. *Hercy vs. Dinwoody*, 2 *Ves. jr.* 93; *Pomfret vs. Winsor*, 2 *Ves.* 482.

We are entirely uninformed how long Willis would be held to be an executor, or a trustee, in Tennessee, where he assumed his trust, but if he had been an executor of an estate in this State, against whom an action accrued for non-performance of his duty as such, for eight years from the accrual of such action, he and his securities would be held liable in an action at law upon his bond. *Gould's Dig. ch.* 106, *sec.* 15. He would, also, be an executor, would hold property as such, until, upon settlement with the Probate Court, or removal from his trust by the court, he would be found subject to the consequences of a disobedience to legal authority. *Baker vs. Grimes, July term*, 1860.

But if it should be admitted that, in 1843, or 1844, the time

OF THE STATE OF ARKANSAS. 7

TERM, 1860.]    Brinkley & Wife vs. Willis et al.

when Mrs. Brinkley became of age, Willis as an executor in this State was obnoxious to such a suit as this, for the betrayal of a trust committed in 1840, the trust being undertaken in 1835, and not being closed in the Probate Court, we should hold that a period of ten years would not be a sufficient lapse of time to save him from rendering an account of his trust.

Lapse of time is allowed to be a defence to an equitable claim, because in the interval between the transaction complained of and sued for, the defendant may have discharged himself from the charge made against him, and have mislaid, lost, or failed to preserve the evidences of his discharge. *Bud vs. Graham*, 1 *Ired. Eq. Rep.* 198.

This defence ought not to be allowed when the defendant furnishes the facts upon which to charge himself, and shows by his own statement that he has not made restitution to 'the beneficiaries whose rights he has violated, though, as in this case, the violation may have been committed under bad advice, and with no fraudulent intent.

Although in this case it may be that the defendant Willis, from his domestic relations to Mrs. Brinkley and their pecuniary consequences, ought not, by the exactions of retributive justice, to have been called upon to make the response as trustee, which the bill demands of him, we think that the time that has elapsed does not excuse him from making such response as he can, or from the consequences of the charges which his answer fastens upon him; and that the statute of limitations affords him no defence to the bill.

The negroes Ned, Jack, Esther, Sal, Jerry, and another one, whose name it is difficult to ascertain from the transcript, are not shown by the proof ever to have been in the possession of Willis, and except there be admissions in his answer, he cannot be charged with them.

The answer of Willis avers the delivery of Ned, Jack, and Esther to the widow of Alexander Floyd, as a part of her dower right. A reference to the will of Alexander Floyd, and to the inventory and sale list of his personal property, shows

that he was in possession of considerable property, and upon the establishment of the will in the Circuit Court of Franklin county, the widow claimed her dower, renouncing the provision made for her in the will.

Then from the answer of Willis, supported by these circumstances, and by the testimony of the witnesses Willis and May, and in view of the lapse of time, we take it for granted that Jack, Ned and Esther were, for dower, or for some other good reason, passed over to Anna Floyd, widow of Alexander Floyd, soon after Willis obtained his letters testamentary upon the estate of Alexander Floyd, and that he is not liable to be called to account for them, for anything contained in his answer. The negro Sarah or Sal was passed to Mary Ann Floyd, as was required by the will of Alexander Floyd.

As to the slaves Jerry and the other one, the averment that they were delivered to Joseph Floyd with other property as his share, or part of his share of the estate, is very unsatisfactory, when the will leaves him but ten dollars, because he had before received such portion as the testator wished to give him. Yet the averment in the answer is but a faint one, qualified expressly by want of memory to give a distinct account of the matter, and in the answer there is no such admission, as in the absence of proof adduced by the plaintiff, ought to charge Willis on account of these two slaves.

But the case is different as regards the slave George, for without doubt, by the proof and by the answer, Willis received him as executor, as part of the undevised estate of Alexander Floyd; and he then belonged to the heirs of William Floyd, and of Ann Willis, his own former wife, and he had no right to take George as his own property, because some one ignorantly or wrongfully informed him that he was so entitled to do. That is not the way in which a testamentary agent should or can dispose of property, specially bequeathed, and no matter that is relied upon in the answer, or that can be conceived capable of being alleged, will justify such self-appropriation of property by an executor.

OF THE STATE OF ARKANSAS. 9

TERM, 1860.]                 Brinkley & Wife vs. Willis et al.

Although there is no record of George having come to Willis' hands as an executor, the proof and answer are sufficient to show such to be the fact.    And it will not do for the possession of an executor to be called his own, and adverse to that of the legatees, because he may hope that such ill-advised information as he recites, may turn out to be good, or because he may rashly act upon it as good.

The interest of Mrs. Brinkley has been treated of in this opinion as the whole interest bequeathed to the heirs of William Floyd.    That however may, or may not be so.    There were three children of William Floyd; Leonard Floyd, who died before his father; Robert Floyd, who died in Texas in 1844; both without issue, and Nancy Floyd, the plaintiff, Nancy Brinkley. But whether Robert Floyd's interest passed to his sister, or to his mother, the wife of Willis, we need not say as it is not before us, yet it would have to be determined before any final decree in favor of Brinkley's wife could be made.

So far we have proceeded upon the idea that the residue of property mentioned in the will, included George and such slaves of Alexander Floyd as were not specifically bequeathed. This will deserve the consideration of the parties upon a further investigation of the case.

But conceding, for the present purpose, that George is so included, upon the principles expressed in this opinion the court erred in dismissing the bill of Brinkley and wife as against Willis.    For not being entitled to plead the statute of limitations, and the lapse of time not being sufficient to discharge him from what his answer has charged upon him, he ought to account to Brinkley and wife for the wife's interest in George. William Floyd's heirs had the one-half interest; that belonged to Nancy Floyd and Robert Floyd, and when Robert Floyd died his part of the interest devolved as he willed it, or as the law of Texas, or of his domicil cast it.

But under the circumstances of this case, we are of opinion that no interest should attend that part of the value of George that shall fall to Brinkley and wife, before the beginning of this

suit, as there has been delay in its commencement, which ought to operate against the plaintiffs. *Lindsey vs. Lindsey*, 1 *Dessa.* 155.

As to Russey's administrator the decree is affirmed. Russey's title was perfect under the law of five years adverse possession of George.

As to Willis the decree is reversed, and Brinkley and wife will be permitted to amend their bill so as to sue only for themselves; and their right as to George is considered as established, unless impeached by other evidence, which both parties have leave to adduce; but whether that right be one half or one fourth is to be made apparent upon a further trial. And Willis is to have leave to show, if he can, that the sixth item of the will of Alexander Floyd does not make him liable in this suit.

Brinkley and wife will pay the costs of Russey's administrator, but will recover their own costs in this court against Willis.